IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Virginia Pirate Corporation, <br><br> Plaintiff, <br><br> v. <br><br> Trident Technical College Enterprise Campus Authority; and Mary Thornley, in her Official Capacity as President, Trident Technical College <br><br> Defendants. | Civil Action No.: 2:19-cv-00276-DCN <br><br><br> **DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendants Trident Technical College Enterprise Campus Authority and Mary Thornley ("Thornley") respectfully move the Court to dismiss the claims in the Complaint filed by Plaintiff Virginia Pirate Corporation ("Pirate") pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction over such claims.

## INTRODUCTION

Plaintiff Virginia Pirate Corporation brings this action against Trident Technical College[1] (the "College") and Thornley, in her official capacity as president of the College, alleging that the College somehow engaged in unfair competition through a program that offered students digital access to textbooks and other course materials. Plaintiff erroneously brings this action in federal court based on diversity jurisdiction. No diversity exists where the defendant is a state itself, not a citizen of a state. The College is not a citizen for the purposes of diversity jurisdiction because

---

[1] Plaintiff named Trident Technical College Enterprise Campus Authority (the "Authority") as a Defendant in what appears to be a clerical error, as the Authority has no bearing on the actions alleged herein. Therefore, we submit that the proper party would be Trident Technical College or the Trident Technical College Area Commission as described below, but note that the outcome is the same regardless of which of the three entities is named.

1

it is an arm or alter ego of the State of South Carolina. Furthermore, because of such status as an arm or alter ego of the State, the Eleventh Amendment grants the College, and Thornley in her official capacity, sovereign immunity. As a result, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction.

## BACKGROUND

### A.     The Complaint

Pirate is a textbook retailer that "sells and rents traditional printed textbooks and other course material ("Printed Materials"), as well as digital versions of textbooks and course related materials ("eText Materials"), to college and university students in South Carolina." (Compl. ¶ 6.) Pirate alleges that it is an Arkansas corporation that is authorized to do business in South Carolina. (Compl. at ¶ 1.)

The College is a state technical college created by the General Assembly as an arm of the State. S.C. Code Ann. § 59-53-10 *et seq*. The College introduced the "Inclusive Access Program" in August of 2018. (Compl. ¶ 8.) According to Plaintiff, the Inclusive Access Program is a program wherein the College contracted with publishers to offer students eText materials at set prices. (*Id.*) Students enrolled in participating courses were automatically charged a "course fee" which was used to purchase the eText Materials. (Compl. ¶ 8.)

Pirate complains that although the College provided students with an option to opt-out of the Inclusive Access program, which would trigger a refund for the cost of the materials, choosing to opt-out would negatively affect the student by "locking" them out of necessary course materials and assignments. (Compl. ¶ 12.) As a result, Pirate argues that students had no real option and were "coerced" into purchasing the materials from the College. (*Id.*). Pirate contends that the implementation of the Inclusive Access program violated the South Carolina Unfair Trade

Practices Act and constitutes intentional inference with contract and with a prospective advantage. (*Id.* ¶¶ 22-41.)

    B.    *The College's Statutory Organization*

The South Carolina Code creates a State Board for Technical and Comprehensive Education (the "Board"), which is an "instrumentality of the State," and is made up of board members appointed by the Governor. S.C. Code Ann. § 59-53-10. The Board "shall have within its jurisdiction … all state-supported technical institutions and their programs …" *Id*. at § 59-53-20. Further, the Board possess "approval or disapproval authority over all post-secondary vocational, technical, and occupational diploma and associate degree programs financed in whole or in part by the State that lead directly to employment." *Id.* In short, the Board, which is appointed by the Governor and is part of the Executive Branch, is in charge of all state technical schools in South Carolina. *Id.*

The same chapter of the South Carolina Code creates area commissions for each of the technical schools overseen by the Board, including the Trident Technical College Area Commission (the "Area Commission"), whose authority is subject to the policies of the Board. *Id.* at § 59-53-410. The Area Commission is the governing body for the College and is empowered to adopt bylaws, rules, and regulations, and possesses general authority to further its purpose, subject to the authority of the Board. *Id.* at § 59-53-420. The Area Commission is comprised of nine members, all of whom are appointed by the Governor. *Id.* at § 59-53-410.

The Code also creates "a body politic and corporate" called the "Trident Technical College Enterprise Authority" (the "Authority").[2] S.C. Code Ann. § 59-53-470. In creating the Authority,

---

[2] Plaintiff improperly names the Authority as the defendant, but the Authority does not govern Trident Technical College; the Area Commission does. However, any government entity affiliated with Trident Technical College would fall under the same or similar analysis and therefore amendment of the Complaint to include a different entity would be futile. Further, because

the General assembly noted that the Area Commission:

> is in a unique position to be an active and full participant in the state's effort to promote and enhance the economic development of this State through the location and development of the film industries and high-technology businesses and industries … Further, … it is in the best interest of the State ... [to] creat[e] and establish[] a separate and distinct instrumentality of the State.

S.C. Code Ann. § 59-53-460, 2006 Act No. 368, Section 1.  The Authority's function is to manage any property designated as part of the "enterprise campus" of the College.  S.C. Code Ann. § 59-53-470.  The Authority's board is the Area Commission.  *Id.*  To be clear, the Area Commission, not the Authority, operates the College under South Carolina law.  S.C. Code Ann. § 59-53-420.

## DISCUSSION

### A.     Standard of Review

The party seeking to invoke jurisdiction in federal court bears the burden of proving that jurisdiction exists.  *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008).  "[S]ubject matter jurisdiction goes to the very power of the court to act."  *S. C. Dept. of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303 (4th Cir. 1999).  Thus, if a court determines that it does not possess subject matter jurisdiction, the Court *must* dismiss the complaint.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

### B.     The College is Not a "Citizen" for the Purposes of Diversity Jurisdiction

This Court lacks jurisdiction over Plaintiff's claims because the College is not a "citizen" for the purposes of diversity jurisdiction.  The Complaint alleges that this Court has jurisdiction under 28 U.S.C. § 1332, otherwise known as diversity jurisdiction. (Compl. ¶ 4.)  Diversity jurisdiction requires that all parties be "citizens" of different states or of foreign countries.  28

---

Plaintiff named the College in part, we will use "the College" to refer to the collective entities at issue in the discussion portion of this brief.

U.S.C. § 1332.

It is indisputable that a state is not a "citizen" for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).  Likewise, state agencies and political subdivisions of states, which are merely an "arm or alter ego of the State," are not "citizens" for diversity jurisdiction purposes. *Id.*; *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255 (4th Cir. 2005) (holding that the University of Maryland is an alter ego of the State and therefore is not a "citizen" of the State for purposes of diversity jurisdiction).  As a result, neither states, nor arms or alter egos of states, can be sued in federal court under § 1332, even if all remaining parties are diverse. *Maryland Stadium Auth.,* 407 F.3d at 260.

The Fourth Circuit has provided a list of nonexclusive factors to consider when determining whether an entity is an arm or alter ego of the State:

> (1) whether any judgment against the entity as defendant will be paid by the State . . . ; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with 'the State [is] sufficiently close to make the entity an arm of the State.'

*S.C. Dept. of Disabilities*, 535 F.3d at 303 (quoting *Maryland Stadium Auth*., 407 F.3d at 261-62).

This Court has previously held that a state technical school organized under the same Chapter of the South Carolina Code and subject to the authority of the same Board was an "arm of the state." *Williams v. Horry-Georgetown Tech. College*, 26 F. Supp. 519, 524 n.1 (D.S.C. 2014) (adopting recommendation of the Magistrate in 4-11-cv-0429-RBH-TER, 2014 U.S. Dist. LEXIS 82983 ("*Williams* Recommendation") (a claim for damages was barred by the Eleventh Amendment because the college was an "arm of the state")).  In *Williams*, Magistrate Judge Rogers

5

concluded that Horry-Georgetown Technical College was an "arm of the state" based on the factors provided above, noting that the college, like Trident Technical College, "is part of the State Board for Technical and Comprehensive Education, which is a 'continuing body and agency and instrumentality of the state.'" *Williams* Recommendation at *13; S.C. Code Ann. § 59-53-10. The District Court adopted the recommendation on the issue. *Williams v. Horry-Georgetown Tech. College*, 26 F. Supp. at 524 n.1.

Turning to the application of the factors, ***first***, any judgment against the Authority, the Area Commission, or the College in this case would negatively affect the South Carolina treasury. If any judgment is awarded against the College in this action, the funds to pay the judgment will inevitably derive from the state treasury, as the General Assembly provides a significant portion of the revenue for the College. *See* Trident Technical College Comprehensive Annual Financial Report, at 24 (June 2018) (available at https://www.tridenttech.edu/about/departments/finance/TTC_comp_annual_fin_report_FY18_DIGITAL_ADA.pdf).[3] The College is largely funded by grants from the General Assembly, or from grants otherwise obtained through State assistance. *See* S.C. Code Ann. § 59-53-57. Further, as a public institution, the College must submit an annual line-item budget for approval to the legislative delegations from Berkeley, Charleston, and Dorchester Counties. *Id.* at § 59-53-440. It is therefore clear that any adverse judgment against the College would involve "the ebb and flow of funds into and out of South Carolina's treasury." *Ristow v. S.C. Ports Auth.*, 58 F.3d 1051, 1054-55 (4th Cir. 1995) (holding that South Carolina Ports Authority is the alter ego of the State

---

[3] For the 2017 to 2018 fiscal year, the College reported $19.7 million in revenue from state appropriations and $24.7 million in revenue from state, federal and other grants. The only other sources of revenue listed are operating revenues (tuition, fees, etc.), and County appropriations. Further, the State capital appropriations far outweigh any other capital appropriations listed at $14.9 million.

of South Carolina). For this reason alone, the College is an alter ego of the State of South Carolina and is entitled to sovereign immunity. *Id.*

Moreover, the other factors weigh in favor of a conclusion that the College is an alter ego of the State of South Carolina. The ***second*** factor—the degree of control the state exercises over the entity—cuts in favor of the College as an alter ego of the State because the board members of both the Authority and the Area Commission are appointed by the State; the State retains oversight and programmatic authority via the Board; and the State provides unmatched funding to the College. As noted, the Authority is made up of members of the Area Commission, who are appointed by the Governor. S.C. Code Ann. § 59-53-470. The Area Commission controls the scale and scope of the Authority's jurisdiction. *Id*. at § 59-53-450. Further, the Area Commission's actions are subject to the oversight of the Board, a state-wide entity with members also appointed by the Governor, meaning the State is directly controlling the educational programs run by the authority. *Id*. at §§ 59-53-10, 59-53-20. In addition, although not entirely State funded, the College is largely funded by grants through the state legislature. *Id.* at § 59-53-57. While the College can procure funding from other sources, any attempts to retain federal funding require participation from the State. *Id.* at § 59-53-90. Finally, members of the Legislative Branch of state government must approve the Area Commission's budget for an upcoming year. *Id.* at § 59-53-440. In sum, the College "does not exercise a significant degree of autonomy from the state." *Clemson Univ. v. W.R. Grace & Co.,* No. 86-2055, 1991 WL 112319 at *12 (D.S.C. June 18, 1991) (internal quotation marks omitted) (holding that Clemson University is an arm of the state); *see also Maryland Stadium Auth.*, 407 F.3d at 264 (holding that the state-controlled nature of the appointment of board members is a "key indicator of state control").

The ***third*** factor—whether the entity is involved with statewide, rather than purely local, concerns—also cuts in favor of the College. *See S.C. Dept. of Disabilities*, 535 F.3d at 303. As the Fourth Circuit has noted, higher education is, by its very nature, a matter of statewide concern. *Maryland Stadium Authority*, 407 F.3d at 265 ("Higher education is an area of quintessential state concern and traditional state governmental function."). The College, and thus its Area Commission, are, first and foremost, a college, dedicated to "serv[ing] as a catalyst for personal, community, and economic development by empowering individuals through education and training." Trident Technical College's Mission Statement, approved Oct. 8, 2000 (https://www.tridenttech.edu/about/ttc/index.htm). As a result, the College is an entity involved with the statewide concerns of the education of the community and economic development. This conclusion is buttressed by an Editor's Note in the code stating that the Area Commission is in a unique position to be an active and full participant in the state's efforts to promote and enhance the economic development of this State." *See* Editor's Note to S.C. Code. Ann. § 59-53-460, 2006 Act No. 368, Section 1.

The ***fourth*** and final factor—how the governmental entity is treated under state law—also cuts in favor of the College. In particular, the College is treated as a state agency or instrumentality under state law, as the Authority, the Area Commission and the College are all subject to the oversight of the Board, which is specifically codified as "an instrumentality of the State." S.C. Code. Ann. § 59-53-10. College employees are state employees subject to state policies. *Id.* at § 59-53-20. Further, the College is defined as a state agency and instrumentality for purposes of the state's limited waiver of sovereign immunity for tort liability. *See id.* at § 15-78-30(e) ("'State' means the State of South Carolina and any of its officers, agencies, authorities, departments, commissions, boards, divisions, instrumentalities. . . including state-supported . . . technical

colleges . . . ."). Moreover, unlike a political subdivision, it lacks the power under state law to tax. Accordingly, South Carolina law treats the College as a state agency. *See Maryland Stadium Authority*, 407 F.3d at 264-65.

In sum, under the relevant test, the College is an alter ego or arm of the State of South Carolina. It is therefore no surprise that case after case has held that South Carolina colleges and universities are arms of the State. *See Clemson Univ.*, 1991 WL 112319 at *12; *Williams,* 26 F. Supp. 519; *see also Martin v. Clemson Univ.*, 654 F. Supp. 2d 410, 415 (D.S.C. 2009); *Larebo v. Clemson Univ.,* No. 8:97-1935, at 10-11 (D.S.C. 1998), *aff'd on other grounds,* 175 F.3d 1014 (4th Cir. 1999) (holding that Clemson University is an arm of the state); *Johnson v. S.C. State Univ.,* No. 5:09-1421-MBS, 2009 U.S. Dist. LEXIS 54094, *4 (D.S.C. June 24, 2009) (finding that the plaintiff's non-discrimination claims were barred by the Eleventh Amendment as South Carolina State University is an alter ego of the state); *DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 496 (D.S.C. 2013) (holding that the University of South Carolina is an arm of the State of South Carolina). Thus, the College is not a "citizen" for purposes of diversity jurisdiction and the Court lacks jurisdiction over these claims as against both defendants.[4]

### B.     Claims Against the College Are Barred by the Eleventh Amendment

Additionally, claims against the College are barred because the College has sovereign immunity under the Eleventh Amendment to the Constitution of the United States. U.S. Const. amend. XI. While a court may not generally exercise authority to determine a case on the merits without first deciding that it possesses jurisdiction, "a federal court has leeway to choose among

---

[4] While Thornley, in her official capacity as President of the College, is also not a citizen for the purposes of diversity jurisdiction, the Court need not make that determination in order to hold that it lacks subject matter jurisdiction over the entire claim. The fact that the College is not a citizen of any state divests this Court of diversity jurisdiction even if the remaining parties are diverse. *See Maryland Stadium Auth.,* 407 F.3d at 260.

9

threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (quotations omitted).  Ultimately, the Supreme Court has determined that "jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Sinochem*, 549 U.S. 422, 431 (*quoting Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006).  As a result, this Court may address the jurisdictional issues in any order it so chooses (*i.e.* dismiss for lack of subject matter jurisdiction, or else dismiss because Defendants have Eleventh Amendment immunity). *See Westinghouse Elec. Corp. v. W. Va. Dep't of Highways*, 845 F.2d 468 (4th Cir. 1988) (affirming a motion to dismiss for lack of jurisdiction based on Eleventh Amendment immunity).

The Eleventh Amendment states that: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Id.*  A state has sovereign immunity under the Eleventh Amendment to the Constitution of the United States against all suits brought by private parties in federal court seeking an award of damages. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 46 (1996).  This immunity extends beyond the state itself to governmental entities that are sufficiently closely related to a State to be considered an arm or alter ego of the State. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123-124 (1979); *Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002); *Ram Ditta v. Md. Nat'l Cap. Park & Planning Com.*, 822 F.2d 456, 457 (4th Cir. 1987).

The factors courts consider in determining whether the entity has sovereign immunity under the Eleventh Amendment are the same factors in considering whether an entity is an arm or

alter ego of the state for citizenship determination. *See Ram Ditta*, 822 F.2d 456; *S.C. Dept. of Disabilities*, 535 F.3d 300, 303 (4th Cir. 2008) (quoting *Maryland Stadium Auth.*, 407 F.3d at 261-62). Based on the analysis set forth above, the College is an arm or alter ego of the State of South Carolina and so, it also has sovereign immunity from "citizens" of another state.

### C.    President Thornley Has Sovereign Immunity in Her Official Capacity

Claims against Thornley in her official capacity are also barred by the Eleventh Amendment and should be dismissed. Just "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst,* 465 at 101-102. (citing *Cory v. White*, 457 U.S. 85, 91 (1982)). "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst*, 465 U.S. at 101 (quoting *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945)) (citing *In re Ayers*, 123 U.S. 443, 487-492 (1887); *Louisiana v. Jumel*, 107 U.S. 711, 720-723, 727-728 (1883)); *See also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."). "[W]hen – as here – the relief sought and ordered has an impact directly on the State itself," claims against state officials based entirely on state law are barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 117. The only recognized exception to this rule is where a suit challenges an official's actions on constitutional grounds. *Ex parte Young*, 209 U.S. 123 (1908).

In this case, Plaintiff has not alleged any facts specific to Thornley. Pirate is alleging claims against the College based on a program implemented generally by the College, not by Thornley in particular. The relief sought is for damages allegedly caused by the program at the College and injunctive relief requiring the College to cease and desist "restraining competition," not specific

11

action or damages from Thornley. Further, since Plaintiff's claim includes violations of state law only, the one recognized exception to Eleventh Amendment immunity does not apply. *See Pennhurst*, 465 U.S. 89 (holding that the Eleventh Amendment immunity bars claims against state officials for violations of state law and the exception promulgated in *Ex parte Young* is wholly inapplicable to claims of violation of state law). As a result, claims against Thornley in her official capacity are barred by the Eleventh Amendment and should be dismissed because this Court has been deprived of the power to adjudicate the claim. *See Pennhurst*, 465 U.S. at 119-120 (The Eleventh Amendment "deprives a federal court of power to decide certain claims against States that would otherwise be within the scope of Art. III's grant of jurisdiction.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Defendants pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: April 3, 2019					GORDON & REES LLP

						By	*/s/ Henry W. Frampton, IV*
							Henry W. Frampton, IV (FED 10365)
							Email: hframpton@grsm.com
							Victoria T. Kepes (FED 13000)
							Email: vkepes@grsm.com
							40 Calhoun Street, Suite 350
							Charleston, SC  29401
							Telephone: 843.278-5900
							*Attorneys for Defendants*